649 P.2d 462

**William C. MARCHIONDO, Petitioner,**

v.

**Robert A. BROWN, et al., Respondents.**

**No. 13440.**

Supreme Court of New Mexico.

June 29, 1982.
Writ Quashed June 29, 1982.
Rehearing Denied Aug. 6, 1982.

Michael E. Vigil, Albuquerque, for petitioner.

Johnson & Lanphere, Eric Lanphere, Thomas McKenna, Keleher & McLeod, John B. Tittmann, Albuquerque, for respondents.

## OPINION

FEDERICI, Justice.

The action between plaintiff, William C. Marchiondo, (Marchiondo) and defendants, Robert A. Brown, et al, (collectively referred to as Journal), has been pending for several years and has been before this Court on numerous occasions. Marchiondo seeks damages by reason of publications by the Journal which he contends are libelous.

Prior to January 28, 1980, and also during the interim between January 28, 1980 and October 27, 1980, Marchiondo had filed motions to compel answers to depositions of at least one defendant and one witness. These motions were denied by the trial court.

On January 28, 1980, the Journal filed a motion to dismiss, or in the alternative, for summary judgment, in the district court, Bernalillo County No. CV 75–02838. This

motion was joined in by other party defendants. The Journal also filed at that time a motion to postpone ruling on the previous motions which had been filed by Marchiondo to compel answers to depositions.

On October 27, 1980, the trial court entered its order as set out below, on motions to dismiss and for summary judgment, prior to acting upon Marchiondo's motion to compel answers to depositions.

On November 12, 1980, the trial court entered its order certifying interlocutory appeal to the Court of Appeals from the court's order on the motions to dismiss and for summary judgment. The order of certification contained the appropriate language for the certification.

On November 24, 1980, Marchiondo filed an application for interlocutory appeal in the Court of Appeals, No. 4932, which was denied. Marchiondo filed with the Supreme Court a petition for writ of certiorari directed to the Court of Appeals. After a review of the record, this Court held that the trial court's order dated October 27, 1980, entered on Journal's motions to dismiss and for summary judgment, involved controlling questions of law as to which there were substantial grounds for difference of opinion and an immediate appeal from said order could materially advance the ultimate termination of the litigation. This Court then ordered that the order of the Court of Appeals denying Marchiondo's application for an interlocutory appeal be reversed and in the interest of time and economy for all concerned, Marchiondo was granted an interlocutory appeal directly to the Supreme Court. 625 P.2d 580.

The trial court's order on the Journal's motions to dismiss and for summary judgment, insofar as relevant to this appeal, reads:

ORDER ON MOTIONS TO DISMISS
AND FOR SUMMARY JUDGMENT

The above motions having come on for hearing, the Court having heard the arguments of counsel, having considered all matters of record, and being otherwise fully advised in the premises,

Finds:

. . . .

2. *Editorial—Our Choice—Joe Skeen.* The Motion to Dismiss should be denied. The plaintiff has stated a claim upon which relief may be granted.

. . . .

4. *Article—Organized Crime showing interest in New Mexico—Photograph of plaintiff.* The article together with the photograph and its positioning states a claim upon which relief may be granted. Defendant's Motion to Dismiss should be denied.

5. *Public Figure.* The defendants have failed to show by clear and convincing evidence or by a preponderance of the evidence that the plaintiff is a public figure for all purposes or for limited purposes. The Court, therefore, finds as a matter of law that the plaintiff is not a public figure.

6. *Actual Malice.* The defendants have shown in the record a complete lack of actual malice attendant to their publication of the articles in question, and plaintiff has failed to come forward with any evidence of actual malice. The Motion for Summary Judgment on this issue should be granted.

It is therefore ordered, adjudged and decreed that:

. . . .

2. The Motions to Dismiss directed to the *Editorial—Our Choice—Joe Skeen* and the *Article—Organized Crime showing interest in New Mexico* are denied.

3. As a matter of law, the plaintiff William Marchiondo is not a public figure for all purposes or a public figure for limited purposes.

4. The defendants acted without actual malice in the publication herein, therefore, any and all claims for presumed or punitive damages are denied.

5. Any and all matters raised by the various motions to dismiss or for summary judgment not specifically ruled on herein are reserved for later decision or trial.

## I.

### ARTICLE ON ORGANIZED CRIME.

The publication involved under this point which we now discuss is the one entitled, "Article—Organized Crime showing interest in New Mexico—Photograph of plaintiff" (Marchiondo), as shown in Paragraph 4 of the trial court's findings of fact and as ruled upon in Paragraph 4 of the trial court's conclusions of law. Under this point, the court concluded that the defendants acted without actual malice in the publication and all claims for presumed or punitive damages were denied.

Prior to the entry of the order by the trial court and prior to the time the Journal filed its motion for summary judgment, extensive discovery was had. The discovery addressed prepublication matters related to the alleged defamatory articles. The trial court's finding that Marchiondo had failed to prove actual malice was based on this discovery. The record shows, however, that the prepublication discovery was incomplete and that no post-publication discovery had yet taken place.

Prior to the Court's order on summary judgment, Marchiondo had filed motions to compel certain of the Journal's witnesses to answer questions previously submitted to them by way of deposition. The witnesses had refused to answer the questions. The Journal had filed a motion for protective order to prevent further discovery by Marchiondo. The order provided in pertinent part that the motion for protective order was granted and the depositions of the witnesses which Marchiondo wanted to depose were vacated and:

> [W]ill not be held until the Order pertaining to the Motions to Dismiss and Motions for Summary Judgment has been entered by this Court.

One of the Journal's employees was to be deposed on his action in placing Marchiondo's photograph below the headline which discussed organized crime. Marchiondo was not aware, nor was he advised, as to who had made the decision concerning the headline and the related photograph, until after the motion for summary judgment had been filed and considered by the court. Additionally, the trial court, at the time it entered its order on summary judgment, had not heard Marchiondo's motions to compel witnesses to answer questions which had been asked by way of depositions.

Marchiondo contends that the order of the trial court on punitive damages was premature, or in the alternative, improper, since he had not been given the opportunity to complete his discovery. We agree.

N.M.R.Civ.P. 26(B)(1), N.M.S.A.1978 (Repl.Pamp.1980), relating to discovery, reads:

> (B) *Scope of discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) in general, *parties may obtain discovery regarding any matter, not privileged,* which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. *It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.* [Emphasis added.]

The pretrial discovery rules, including Rule 26, intend a liberal pretrial discovery, to enable the parties to obtain the fullest possible knowledge of the facts before trial. Notwithstanding objection to the depositions, the presumption is in favor of discovery. Plaintiff has a right to examine a defendant fully and exhaustively. Such a right is fundamental to our system of jurisprudence. *See Griego v. Grieco,* 90 N.M. 174, 561 P.2d 36 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977).

The discretion granted to the trial court under Rule 26 to issue protective or-

ders must be read in the light of the purpose of these rules, which is to permit discovery. *See Salitan v. Carrillo,* 69 N.M. 476, 368 P.2d 149 (1961).

With reference to summary judgments, we also note that N.M.R.Civ.P. 56(f), N.M.S. A.1978 (Repl.Pamp.1980), provides that if a party opposing a motion for summary judgment cannot present, by affidavit, facts essential to justify his position, the court may permit affidavits to be obtained, or depositions to be taken, or other discovery to be had.

Courts generally permit discovery where relevant facts are in the exclusive control of the opposing party or where facts must be developed as to motive, intent, knowledge or credibility. *See Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Ammerman v. Hubbard Broadcasting, Inc.,* 91 N.M. 250, 572 P.2d 1258 (Ct. App.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

In *Herbert v. Lando, supra,* plaintiff received widespread media coverage when he accused his superior military officers of covering up reports of atrocities and other war crimes. A few years later, the media defendants broadcast a report on the plaintiff and his accusations. In his complaint, plaintiff alleged that the program and articles falsely portrayed him as a liar and he asked substantial damages for injury to his reputation. In preparing his case in the light of the requirement to prove "actual malice," Herbert deposed Lando and then asked the court to compel answers to questions which Lando refused to answer on the ground that the First Amendment prohibited inquiry into the state of mind of those involved in the editorial process.

The Supreme Court reversed the Court of Appeals and affirmed the United States District Court's rejection of the claim of constitutional privilege for those involved in the editorial processes. In doing so, the Court stated:

Applying the standard of Fed. Rule Civ. Proc. 26(b), which permits discovery of any matter "relevant to the subject matter involved in the pending action" if it would either be admissible in evidence or "appears reasonably calculated to lead to the discovery of admissible evidence," the District Court ruled that because the defendant's state of mind was of "central importance" to the issue of malice in the case, it was obvious that the questions were relevant . . . .

*Id.* at 157, 99 S.Ct. at 1639.

With reference to evidence of state of mind, the Court in *Herbert v. Lando, supra,* said:

Courts have traditionally admitted any direct or indirect evidence relevant to the state of mind of the defendant and necessary to defeat a conditional privilege or enhance damages. The rules are applicable to the press and to other defendants alike, and it is evident that the courts across the country have long been accepting evidence going to the editorial processes of the media without encountering constitutional objections. [Footnotes omitted.]

*Id.* at 165, 99 S.Ct. at 1643.

Concerning the claimed First Amendment privilege as it relates to the type of evidence which may be examined, the Court in *Herbert v. Lando* said:

Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances. The President, for example, does not have an absolute privilege against disclosure of materials subpoenaed for a judicial proceeding. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). [Footnote omitted.]

*Id.* at 175, 99 S.Ct. at 1648. We reject the Journal's claim that constitutional privilege bars further discovery here.

In *Ammerman v. Hubbard Broadcasting, Inc., supra,* the Court of Appeals held that where proof of actual malice was involved and there was an issue as to the credibility and reliability of confidential informants, a

plaintiff should be allowed access to the identity of an informant and to any recorded statements made by him. The court held further that summary judgment for the defendant was premature when entered before the defendant disclosed the names of the confidential informants which plaintiff sought for the purposes of determining whether the broadcast involved actual malice.

■■ The discovery requested by Marchiondo could lead to the discovery of relevant facts which are in the exclusive control of the defendants, or lead to facts which might be developed to show motive, intent, knowledge or credibility, or proof of actual malice. It was error for the trial court to enter summary judgment for defendants on the question of malice, in light of the fact that Marchiondo had been denied the opportunity to discover the identity and state of mind of the person who made the decision concerning the headline and related photograph. Both of these facts are of "central importance" to the issue of malice and consequently to the question of punitive damages. As the Supreme Court stated in *Herbert v. Lando, supra,* at 160, 99 S.Ct. at 1640:

> *New York Times* and its progeny made it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant. To be liable, the alleged defamer of public officials or of public figures must know or have reason to suspect that his publication is false. In other cases proof of some kind of fault, negligence perhaps [footnote omitted], is essential to recovery. Inevitably, unless liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer would be open to examination.
>
> It is also untenable to conclude from our cases that, although proof of the necessary state of mind could be in the form of objective circumstances from which the ultimate fact could be inferred, plaintiffs may not inquire directly from the defendants whether they knew or had reason to suspect that their damaging publication was in error.

Accordingly, we hold that the finding of summary judgment for the defendants was premature, in that it was rendered before the thoughts, editorial processes and other information in the exclusive control of the alleged defamer could be examined. The trial court erred in ruling at this stage that the defendants had acted without actual malice in its publications and that therefore any and all claims for punitive damages were denied. We reverse this finding of summary judgment and remand for further discovery consistent with this opinion.

II.

PUBLIC FIGURE.

In its order of October 27, 1980, the trial court found in its findings (No. 5), and concluded in its conclusions (No. 4), that as a matter of law, Marchiondo was not a public figure for any purpose. We agree.

■ Whether or not a person is a public figure is relevant in determining the standard of proof for damages. Whether a person is a public figure is a question of law for the court. *Ammerman v. Hubbard Broadcasting, Inc., supra; Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *Rebozo v. Washington Post Co.,* 637 F.2d 375 (5th Cir. 1981). *See Marchiondo v. Tribune,* 98 N.M. 282, 648 P.2d 321, (Ct.App.1981). Generally, lawyers, in pursuing their profession, are not public figures unless they voluntarily inject themselves or are drawn into a particular public controversy and thereby become public figures for a limited range of issues. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *see Marchiondo v. Tribune, supra.*

■ Although Marchiondo is well known as an attorney and well known as a member of the Democratic Party, this is not sufficient to depict him as a public figure. His influence as a private attorney and as a person involved in politics cannot be said to be pervasive. It is clear from the record in this case that he did not voluntary inject

himself into the controversy on organized crime. He was involuntarily drawn into the controversy, a private controversy between Marchiondo and the Journal. The controversy arose at the time of the publication of the alleged libel. We agree with the trial court that as to the headlines, photograph and article regarding organized crime, Marchiondo was not a public figure.

### III.
### EDITORIAL—OUR CHOICE—JOE SKEEN.

The issue involved on appeal under this point relates to the article entitled "Editorial—Our Choice—Joe Skeen."

The Journal had filed a motion to dismiss Marchiondo's cause of action based upon the above article on the ground that it failed to state a claim upon which relief can be granted. The trial court denied the Journal's motion. We reverse the trial court.

The Journal contends that the editorial is privileged as a constitutionally protected opinion. We agree.

Marchiondo asserts that the language contained in the editorial, "[a]s a criminal attorney, Marchiondo thrives by having friends in key places," is defamatory. He alleges in his complaint that the article imputes to him a crime, unethical and unprofessional conduct, and lack of bona fide legal competence; that the language tends to render him contemptible or ridiculous in public estimation.

The record reflects that the author of the editorial in question based his language on letters which Marchiondo had written to over 1,000 friends. The letters stated that, "[i]t has been my experience that it is important to have a person in the governor's office who is understanding of the problems of my friends and clients." So, in a sense, Marchiondo was at least partially responsible for the language contained in the editorial.

We have here an article which (1) appears in print as an editorial; (2) involves an expression on a political matter by the news media; and (3) comments upon a matter of public interest, the election of a governor.

Whether a statement is privileged presents a question of law for the court to determine. *Marchiondo v. Tribune, supra; Gengler v. Phelps,* 92 N.M. 465, 589 P.2d 1056 (Ct.App.1978), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1979). The trial court has determined that the publication was not privileged. We disagree.

On the question of constitutional protection of the publication of ideas and opinions, the Court in *Gertz v. Robert Welch, Inc., supra,* said:

> We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues. [Footnote and citation omitted.]

*Id.* at 339–40, 94 S.Ct. at 3006–007.

This rule is not without its limitations. As Judge Donnelly wrote in *Marchiondo v. Tribune, supra:*

> Extension of constitutional protection under the First Amendment to opinions poses a new and novel difficulty in distinguishing between statements of fact and statements of opinion. Ideas and opinions, although incorrect or faulty in their premise, are protected by the United States Constitution. False statements of fact, whether intentionally or negligently published are unprotected. The problem inherent in distinguishing between "opinions" and "statements of fact" are discussed by Sack, *supra,* § IV.2 at 155–56:

>> No task undertaken under the law of defamation is any more elusive than distinguishing between the two.

>> Some statements are clearly statements of opinion: What ought to be done, the propriety or aesthetic or moral worth of some act or object. So, too,

statements which explicitly assert that they are the writer's speculation rather than his knowledge, and which do not purport to set forth the facts underlying the speculation, may be statements of opinion . . . .

But statements of opinion are often couched in factual terms. Predictions about the future, for example. . . . Conversely, statements [which expressly purport to be opinions] are often understood to be statements of fact.

. . . .

Debate about matters of public importance is itself of public importance. Freedom to comment, particularly in the arena of politics, is encouraged rather than suppressed as a matter of policy. Such protection is 'indispensable to the exercise of freedom'. [Footnotes omitted.]

■ What constitutes a statement of opinion as distinguished from a statement of fact must be determined in each case. In resolving the distinction, the following should be considered: (1) the entirety of the publication; (2) the extent that the truth or falsity may be determined without resort to speculation; and (3) whether reasonably prudent persons reading the publication would consider the statement as an expression of opinion or a statement of fact.

The protection afforded political opinions in actions for defamation is addressed by R. Sack, Libel, Slander, and Related Problems § IV.2.5 at 160–161 (1980):

One of the cardinal reasons for protecting expression is to assure proper operation of the political process. Courts have been particularly willing to read political invective as mere opinion, privileged under the circumstances.

■ With the above considerations in mind, we conclude that the Joe Skeen editorial is a constitutionally protected opinion. The cause of action based upon this article failed to state a claim upon which relief can be granted.

For an exhaustive and scholarly discussion and citation of authorities on the question of constitutionally protected expression of opinion, see Marchiondo v. Tribune, supra.

IV.

CROSS–APPEAL BY DEFENDANTS (JOURNAL).

In its brief, the Journal presents several issues on appeal, urging that the trial court erred in denying its motion to dismiss Marchiondo's complaint based upon the article on organized crime. The issues presented include the law of libel before and after Gertz; damages; and constitutionally privileged publications and limitations on libel actions.

For years, federal and state courts, including those in New Mexico, have been confronted with the problem of achieving a proper balance between the laws of defamation and the laws of constitutionally protected freedom of speech and of the press. The problem again presents itself in this case.

A. LAW OF LIBEL BEFORE AND AFTER GERTZ; DAMAGES.

The applicable law of libel must be reviewed in light of the changes in the law of defamation as articulated by the United States Supreme Court and by this Court. Herbert v. Lando, supra; Gertz v. Robert Welch, Inc., supra; Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Reed v. Melnick, 81 N.M. 608, 471 P.2d 178 (1970); Del Rico Co. v. New Mexican, 56 N.M. 538, 246 P.2d 206 (1952); Mauck, Stastny & Rassam, P.A. v. Bicknell, 95 N.M. 702, 625 P.2d 1219 (Ct. App.1980).

In Gertz v. Robert Welch, Inc., supra, the United States Supreme Court was faced with the problem inherent in the conflict between the First Amendment and the laws of defamation in the various states. United States Supreme Court cases prior to Gertz

held that where a defamation plaintiff was either a public official or a public figure, or where an allegedly defamatory statement involved a matter of public concern, it was incumbent upon the plaintiff to prove that the defendant acted with actual malice (with knowledge of falsity or in reckless disregard of the truth). *Rosenbloom v. Metromedia, supra; Curtis Publishing Co. v. Butts, supra; New York Times Co. v. Sullivan, supra.* This is still the applicable rule. However, where the defamation plaintiff is neither a public official nor a public figure, but rather, a private defamation plaintiff, *Gertz* set forth requirements which profoundly affected the traditional law of defamation. In the primary holding in *Gertz*, Justice Powell stated:

We hold that, *so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability* for a publisher or broadcaster of defamatory falsehood injurious to a private individual. [Footnote omitted; emphasis added.]

*Id.* at 347, 94 S.Ct. at 3010.

The *Gertz* Court, therefore, did not require proof of actual malice in cases involving non-public defamation plaintiffs, and left it to the states to impose either an actual malice standard or a lesser standard of fault for non-public defamation plaintiffs, so long as the states did not apply strict liability. In accord with *Gertz*, we adopt the ordinary negligence standard as a measure of proof necessary to establish liability for compensation for actual injury.

The Court in *Gertz, supra*, at 349–50, 94 S.Ct. at 3011–12, said:

We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. *Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions,* and all

awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury. [Emphasis added.]

In *Gertz, supra*, the Court also held that a non-public defamation plaintiff could seek punitive damages, but to recover he must prove actual malice:

Our accommodation of the competing values at stake in defamation suits by private individuals allows the States to impose liability on the publisher or broadcaster of defamatory falsehood on a less demanding showing than that required by *New York Times* [actual malice]. This conclusion is not based on a belief that the considerations which prompted the adoption of the *New York Times* privilege for defamation of public officials and its extension to public figures are wholly inapplicable to the context of private individuals. Rather, we endorse this approach in recognition of the strong and legitimate state interest in compensating private individuals for injury to reputation. *But this countervailing state interest extends no further than compensation for actual injury.* For the reasons stated below, we hold that *the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.* [Emphasis added.]

*Id.* at 348–49, 94 S.Ct. at 3011.

We adopt the *Gertz* standard of proof for recovery of punitive damages.

In summary, we hold that as to the law of defamation:

(1) The standard of strict liability no longer applies;

(2) The ordinary common law negligence standard of proof shall apply to private defamation plaintiffs to establish liability, and liability is limited to recovery of actual damages;

(3) A private defamation plaintiff must plead and prove special damages in order to recover them;

(4) A private defamation plaintiff who seeks punitive damages· must prove actual malice.

We note that our recent Uniform Jury Instructions applicable to libel and slander, Chapter 10, UJI Civil, may not correctly state the law now articulated by the United States Supreme Court in *Gertz, supra*, and by this Court in this opinion. We further note particularly that N.M.U.J.I.Civ. 10.4, subparagraph 3 (Libel Per Quod), N.M.S.A. 1978 (Repl.Pamp.1980), does not include general or actual damages, but mentions only recovery of special damages. This is no longer the law, and recovery for actual or general damages is to be included in the instruction.

The following appears in the Committee Comment to N.M.U.J.I.Civ. 10.4:

Punitive damages are not recoverable. *Gertz v. Robert Welch, Inc., supra.*

This statement is not correct. Punitive damages are recoverable if there is proof that the publication was made with actual malice (knowledge of falsity or reckless disregard of the truth). *Gertz, supra.*

■ The trial courts should fashion appropriate instructions based upon the facts in each case, at least until we have approved specific uniform jury instructions to substitute for the instructions which are now in existence but which are erroneous.

## B. CONSTITUTIONALLY PRIVILEGED PUBLICATIONS AND LIMITATIONS ON LIBEL ACTIONS.

We now proceed to consider further the Journal's contention that the headline, photograph and article on organized crime are constitutionally protected opinion or privileged under the fair comment doctrine. We have previously, in this opinion under Point III, held that the Skeen article is a constitutionally protected opinion.

In *Rosenbloom v. Metromedia, supra*, the United States Supreme Court applied the common law doctrine of fair comment to the requirements of the First Amendment. The Court in *Rosenbloom* held that a defamation plaintiff must prove actual malice where the alleged defamation involved matters of public interest.

Fair comment was also the basis of the post-*Gertz* New Mexico decision in *Mauck, Stastny & Russam, P. A., v. Bicknell, supra*, which recognized a qualified privilege for a non-public figure who makes a statement regarding a matter of public interest.

In *Gertz*, however, the United States Supreme Court clearly retreated from, though it did not expressly overrule, its prior position in *Rosenbloom*. In criticizing *Rosenbloom* for going too far in protecting constitutional rights without adequately considering the role of the states in protecting the reputations of private individuals through the law of defamation, Justice Powell stated:

[W]e conclude that the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual. The extension of the *New York Times* test [of actual malice] proposed by the *Rosenbloom* plurality would abridge this legitimate state interest to a degree that we find unacceptable. And it would occasion the additional difficulty of forcing state and federal judges to decide on an *ad hoc* basis which publications address issues of "general or public interest". . . . The "public or general interest" test for determining the applicability of the *New York Times* standard to private defamation actions inadequately serves both of the competing values at stake [the First Amendment and the law of defamation]. On the one hand, a private individual whose reputation is injured by defamatory falsehood that does concern an issue of public or general interest has no recourse unless he can meet the rigorous requirements of *New York Times*. . . . On the other hand, a publisher or broadcaster of a defamatory error which a court deems unrelated to an issue of public or general interest may be held liable in damages even if it took every

reasonable precaution to ensure the accuracy of its assertions.

*Gertz, supra,* at 345–46, 94 S.Ct. at 3009–10.

The *Gertz* Court said that under certain conditions, "opinions" are protected by the First Amendment. This statement in *Gertz,* as well as the statement above criticizing *Rosenbloom, supra,* indicates that the "public interest" privilege has been altered. Opinions are protected but defamatory falsehood is not. The problem which arises under the new standard is distinguishing between an opinion and a mere statement of fact.

In *Kutz v. Independent Pub. Co., Inc.,* 97 N.M. 243, 638 P.2d 1088 (Ct.App.1981), the court set out the criteria for determining as a matter of law, when a statement may be said to be opinion or fact. "[I]f the material as a whole contains full disclosure of the facts upon which the publisher's opinion is based and which permits the reader to reach his own opinion, the court in most instances will be required to hold that it is a statement of opinion, and absolutely privileged." *Id.* at 245, 638 P.2d at 1090 (citation omitted). Conversely, where there are implications in the statement "that the writer has private, underlying knowledge to substantiate his comments about plaintiff," and such knowledge implies the existence of defamatory facts, the statement is deemed to be factual and not privileged. *Id.* at 246, 638 P.2d at 1091. *See also Marchiondo v. Tribune, supra.*

■ A good statement setting forth guidelines to be followed by trial courts in an initial determination of whether a publication constitutes opinion or fact is found in *Mashburn v. Collin,* 355 So.2d 879, 885 (La. 1977):

> [T]he crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact. [Footnote omitted.]

■ We also adopt the language contained in *Bindrim v. Mitchell,* 92 Cal.App.3d 61, 77–78, 155 Cal.Rptr. 29, 39, *cert. denied,* 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979):

> Where the statements are unambiguously fact or opinion, . . . the court determines as a matter of law whether the statements are fact or opinion. However, where the alleged defamatory remarks could be determined either as fact or opinion, and the court cannot say as a matter of law that the statements were not understood as fact, there is a triable issue of fact for the jury. [Citations and footnote omitted.]

To the extent that *Reed v. Melnick, supra; Del Rico v. New Mexican, supra; Marchiondo v. Tribune, supra,* and all other opinions of this Court and the Court of Appeals are inconsistent with this opinion, such cases are hereby expressly overruled.

The cause is remanded to the trial court for further proceedings consistent and in accord with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE and RIORDAN, JJ., concur.