881 P.2d 735

**George W. MOORE, Plaintiff–Appellant,**

v.

**SUN PUBLISHING CORPORATION, Shearman Corporation, Paul E. Carter, and Maynard Woodhatch, Defendants–Appellees.**

**No. 14758.**

Court of Appeals of New Mexico.

Aug. 1, 1994.

Certiorari Denied Sept. 15, 1994.

Cynthia A. Fry, Albuquerque, for plaintiff-appellant.

Sarah M. Bradley, Lisa M. Tourek, Bradley & McCulloch, P.A., Albuquerque, for defendants-appellees Sun Pub. Corp. and Paul E. Carter.

Ronald J. Childress, Elaine Dailey, Klecan, Childress & Huling, Albuquerque, for defendants-appellees Shearman Corp. and Maynard Woodhatch.

## OPINION

MINZNER, Chief Judge.

Plaintiff George W. Moore (Moore) appeals from the district court's decision granting Defendants summary judgment on his complaint for defamation, invasion of privacy, and intentional infliction of emotional distress arising out of a notice sent by Defendant Paul E. Carter (Carter) to all Lea County attorneys on June 7, 1990, and a *Publishers' Auxiliary* article based on an interview with Defendant Maynard Woodhatch (Woodhatch). We understand the district court to have determined that, based on the undisput-ed facts, Moore was not going to be able to establish one or more of the elements of a prima facie case for defamation. This case raises issues of first impression regarding defamation by implication and the tort of invasion of privacy. We affirm the district court's decision granting Defendants summary judgment on the claim of defamation based on the June 7 notice. However, we agree with Moore that there are genuine issues of material fact regarding his claim for invasion of privacy based on the June 7 notice and his claim for defamation based on the *Publishers' Auxiliary* article. Therefore, Defendants Sun Publishing Corporation (Sun), Carter, and Shearman Corporation (Shearman) were not entitled to summary judgment on the invasion of privacy claim based on the June 7 notice, and Woodhatch was not entitled to summary judgment based on the *Publishers' Auxiliary* article. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Moore was employed as publisher of the *Hobbs Daily News–Sun* for eighteen months. One of Moore's duties as publisher was to increase the newspaper's revenues. To that end, Moore wrote to the owners of the newspaper, Defendants Shearman and Sun, and informed them that he planned to institute a fee of $25.00 for preparation of each affidavit of publication furnished for legal notices placed in the newspaper, a service which had previously been free of charge. Moore received no comment from either Shearman or Sun regarding the proposed fee, and the newspaper's legal advertisers were notified of the fee, which was implemented on October 1, 1989.

On March 12, 1990, Shearman and Sun fired Moore. Later that month Carter, the newspaper's advertising director, sent out an announcement to those who typically placed legal advertising in the newspaper retracting the affidavit fee. On June 7, 1990, Carter sent out a second notice addressed to all Lea County attorneys.

The June 7 notice reads as follows:

June 7, 1990

ATTORNEYS OF HOBBS AND LEA COUNTY:

A couple of months ago the News–Sun changed publishers, and when that happened, a very unpopular decision was reversed. It so happened, as you may well remember, former News–Sun employee George Moore established a $25 affidavit fee for all Legal advertisements in the News–Sun.

No sooner than this announcement was made than Lea County attorneys switched much of their Legal advertising into a competing weekly newspaper. With good fortune, enough attorneys and others complained to the owners of the News–Sun that all was not well with their Hobbs' property and the then publisher was discharged. That leaves the rest of us to pick up the pieces and to restore the News–Sun to be the No. 1 Legal newspaper in Lea County.

We encourage you to place your Legal advertising in the News–Sun. Our rates are the same as for all Legal publications in the State as set down by the Legislature. There is not an affidavit fee of any sort. We supplied you with affidavits at no charge for fifty years or more, and that is our practice today.

This letter is going to every attorney we can name. If you have already switched back to the News–Sun, let me say we certainly appreciate that consideration. Just by chance we are reaching a few who have not heard the dropping-the-affidavit-fee story, we will certainly appreciate your cooperation in taking another look at the News–Sun.

It's a somewhat sticky situation, isn't it! It was most unfortunate George made that decision, and we apologize for that action many months ago. Please join with us in making the Legal pages of the News–Sun the centerplace for legal advertising in Lea County.

Thanks for your consideration.

Sincerely,

/s

Paul E. Carter
Advertising Director

Moore filed a complaint claiming defamation and invasion of privacy against Carter, Shearman, and Sun based on the content of the June 7 notice. On December 10, 1990, *Publishers' Auxiliary*, a trade publication of the National Newspaper Association, published an article regarding Moore's lawsuit; the article, which was based on an interview with Woodhatch, a Sun publisher, contained several statements about Moore. Moore amended his complaint to add a count for defamation by Woodhatch.

The district court concluded at the close of the hearing on Defendants' motion for summary judgment that neither the June 7 notice nor the *Publishers' Auxiliary* article were actionable. On appeal Moore claims that the district court erred in granting summary judgment on his claims for defamation and on his claim for invasion of privacy because there are genuine issues of material fact, and Defendants were not entitled to judgment as a matter of law. Moore also claims that the district court granted summary judgment prematurely because Defendants failed to comply fully with the court's order compelling discovery.

## II. PRELIMINARY ISSUES

### A. Discovery

■ Moore argues that the district court granted summary judgment prematurely because (1) he had not yet deposed Carter and Woodhatch, and (2) he was still in the process of obtaining documents he had sought through a motion to compel production. *See Sun Country Sav. Bank v. McDowell*, 108 N.M. 528, 534, 775 P.2d 730, 736 (1989). Discovery issues occupied the parties until the time of the summary judgment hearing. However, Moore had sought and obtained a continuance of the hearing on Defendants' motion for summary judgment because of problems he had experienced in obtaining discovery. At the close of the January 15, 1993 hearing on the motion to compel, Moore's counsel indicated that the procedure and time frame proposed by the district court in resolution of the discovery dispute were "perfectly acceptable." The court entered an order on February 10 detailing its

prior decision at the close of the hearing on each disputed item with respect to each Defendant. The record contains certificates of service for supplemental responses to Moore's request for production mailed by Sun and Carter on January 22 and by Shearman and Woodhatch on January 21. Given the procedural history revealed by the record, we do not construe the reference to discovery issues as a request for a continuance or as sufficient to preserve a claim that it was premature to grant summary judgment for lack of discovery. Thus, we conclude that this issue was not preserved. *See* SCRA 1986, 12–216(A) (Repl.1992).

### B. Intentional Infliction of Emotional Distress

■ In his docketing statement, Moore also contended that the district court erred in granting summary judgment on his claim for intentional infliction of emotional distress. That issue has not been briefed. Issues raised in the docketing statement and not briefed are deemed abandoned. *State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985). This issue is deemed abandoned.

## III. THE JUNE 7 NOTICE

### A. Defamation

As the parties note, our Supreme Court has adopted new Uniform Jury Instructions covering the law of libel and slander. *See* SCRA 1986, 13–1001 to –1014 (Repl.1991) (effective January 1, 1987). The parties based their arguments on the new Uniform Jury Instructions, and in ruling on the motion for summary judgment the district court relied on those instructions.

Resolution of the issues on appeal regarding the June 7 notice requires an analysis of the following requirements of defamation: (1) a false statement of fact, and (2) that the communication tended to expose Moore to contempt, to harm his reputation, or to discourage others from associating or dealing with him. *See generally* SCRA 13–1002 (general statement of elements of defamation

action); *see also* SCRA 13–1007 (defamatory communication defined).

Moore argues that the June 7 notice contains statements that are defamatory as a matter of law. *Cf. Marchiondo v. New Mexico State Tribune Co.*, 98 N.M. 282, 287–88, 648 P.2d 321, 326–27 (Ct.App.1981) (a statement may be viewed as defamatory per se if "without reference to extrinsic matters and viewed in its plain and obvious meaning, the statement imputes to the plaintiff ... unfitness to perform the duties of an office or employment for profit...."), *cert. quashed*, 98 N.M. 336, 648 P.2d 794 (1982), *overruled on other grounds by Marchiondo v. Brown*, 98 N.M. 394, 649 P.2d 462 (1982). In the alternative, Moore argues that a jury must decide whether the notice is defamatory.

■ Defendants argue that the district court correctly determined they were entitled to summary judgment as a matter of law, because the notice contained no defamatory statements of fact and, in the alternative, that they have demonstrated the truth of the only statements of fact the notice included. As Moore notes, in moving for summary judgment on the claim of defamation based on the June 7 notice, Defendants Sun, Carter, and Shearman did not rely on the distinction between opinion and fact recognized by SCRA 13–1004 (defining element of fact and contrasting opinion). *See generally* Robert D. Sack, *Libel, Slander, and Related Problems* § IV.2, at 154–56 (1980) (discussing distinction between fact and opinion for purposes of law of defamation). We address this requirement, however, because we will affirm a trial court's decision reaching a correct result, even though the reason offered to support the result is wrong. *See Williams v. Williams*, 109 N.M. 92, 95, 781 P.2d 1170, 1173 (Ct.App.), *cert. denied*, 109 N.M. 54, 781 P.2d 782 (1989).

### (1) Defamation as a Matter of Law or Fact

■ In *Marchiondo v. Brown*, the New Mexico Supreme Court reviewed the law of defamation in light of the United States Supreme Court decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Our Court held that liability for defamation required fault, that if

the plaintiff was not a public figure or official he or she was required to prove actual negligence, and that liability is limited to actual damages. *Marchiondo v. Brown,* 98 N.M. at 401–03, 649 P.2d at 469–71; *see also Furgason v. Clausen,* 109 N.M. 331, 337, 785 P.2d 242, 248 (Ct.App.), *cert. denied,* 109 N.M. 232, 784 P.2d 419 (1989). However, our law retains the rule that whether a statement is susceptible to a defamatory meaning is a matter of law for the district court to decide. *See* SCRA 13–1007, Directions for Use (citing *Marchiondo v. New Mexico State Tribune Co.,* 98 N.M. at 287, 648 P.2d at 326). If the statement could be susceptible of a defamatory meaning as well as an innocent one, a question of fact is presented for the jury, which is required to determine which meaning was understood by the recipient. *See* SCRA 13–1007, Directions for Use. *Marchiondo v. Brown,* provides guidance on when a statement may be characterized as defamatory or not as a matter of law.

It has been suggested that prior New Mexico cases took a liberal view of when a statement was susceptible of both innocent and defamatory meanings. *See generally Saenz v. Playboy Enters., Inc.,* 653 F.Supp. 552, 558 (N.D.Ill.1987) (discussing New Mexico case law regarding libel per quod), *aff'd,* 841 F.2d 1309 (7th Cir.1988). Whether that is a correct view of our cases or not, such cases do provide guidance in identifying allegedly defamatory statements that raise issues of fact rather than issues of law.

■ The appropriate test for defamation under the new jury instructions, *see* SCRA 13–1007, is whether the "plain and obvious meaning" of the communication was defamatory. The questions in this appeal are whether Moore is right in arguing that the June 7 notice conveyed a plain, obvious defamatory meaning as a matter of law and, if not, whether there was an issue for the jury. We first consider Moore's claim that the June 7 notice is defamatory as a matter of law.

### *(2) The Law of Defamation Applied*

■ Moore contends that the notice defamed him as a matter of law, because it states he was discharged and the *Hobbs Daily News–Sun* lost business due to the affidavit fee. Although we agree with Moore that the notice states that he was responsible for establishing the fee and that the *Hobbs Daily News–Sun* lost business as a result of that decision, we are not persuaded that those statements are defamatory as a matter of law. The notice describes a disagreement over policy, rather than making any particular, direct statement about fitness. The notice directly states that Moore made a decision that was unpopular within the legal community, that his employer decided to reverse the decision, and that the reversal occurred when Moore departed.

Moore argues that the notice contained three false facts which defamed him by imputing to him unfitness to perform the duties of his employment. The three facts Moore has identified on appeal are:

(1) that he alone was responsible for the implementation of the affidavit fee, when actually Defendants Shearman, Sun and Woodhatch ratified and implicitly approved this implementation; (2) that the newspaper lost substantial business as the result of [his] actions, when this was not the case and Defendants knew this was not the case; and (3) that [he] was discharged because of implementation of the affidavit fee.

These facts are not explicitly stated in the notice, however.

The facts actually contained in the notice all appear to be true. The notice can be read as enticing former advertisers to return, as well as attracting new business, on the basis that management and Moore were in disagreement and that management prevailed. However, although the actual language of the June 7 notice is not defamatory, defamatory inferences might be drawn from it. That is, those who read the notice might have drawn the inference that (a) Moore's decision cost the paper a substantial amount of money, and (b) the decision was one with which others involved in managing the paper disagreed. Those who drew these inferences might have concluded that Moore was incompetent. We think Moore is arguing, in effect, for recognition of defamation by implication.

*See generally White v. Fraternal Order of Police,* 909 F.2d 512, 518–20 (D.C.Cir.1990) (discussing the proper analysis in identifying defamation by implication).

### (3) Defamation by Implication

■ The theory of defamation by implication recognizes that "[t]he reputational injury caused by a communication may result not from what is said but from what is implied." Rodney A. Smolla, *Law of Defamation* § 4.05[1], at 4–17 (1994). Since Moore is not a public figure or official and this is not an event of public significance, this case requires us to determine whether New Mexico recognizes liability for statements from which a defamatory inference may be drawn and, if so, how such a statement should be analyzed in the context of a private libel. *See generally Locricchio v. Evening News Ass'n,* 438 Mich. 84, 476 N.W.2d 112, 125–32 (1991) (discussion of defamation by implication as shaped by constitutional limitations imposed by protection afforded free speech), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 360 (1992). We think that defamation by implication is consistent with prior New Mexico cases analyzing claims of libel and slander per quod. *See Saenz,* 653 F.Supp. at 558. Thus, we conclude that New Mexico cases support recognizing an action for defamation based on implication.

In *White,* Judge Mikva, writing for the panel, stated that:

> [T]he court must first examine what defamatory inferences might reasonably be drawn from a materially true communication, and then evaluate whether the author or broadcaster has done something beyond the mere reporting of true facts to suggest that the author or broadcaster intends or endorses the inference. We emphasize that the tortious element is provided by the affirmative conduct of the author or broadcaster, although it is immaterial for purposes of finding defamatory meaning whether the author or broadcaster *actually* intends or endorses the defamatory inference.

909 F.2d at 520.

Applying this test, we are persuaded that readers of the notice might have drawn a defamatory inference or inferences. Defendants included statements in the notice such as "[i]t was most unfortunate George made that decision," "[i]t's a somewhat sticky situation," "[w]ith good fortune, enough attorneys and others complained," and "[t]hat leaves the rest of us to pick up the pieces." These statements go beyond the essential facts, and suggest that the author of the notice may have intended some negative inference. Further, Defendants had sent a prior notice about withdrawing the fee that made no reference to Moore. In providing further explanation in the June 7 notice, Defendants probably hoped to encourage the readers to attribute fault to Moore rather than current management.

### (4) Statement of Fact(s) or Opinion

■ However, we are not persuaded that the notice is actionable. "The legal decision that a particular statement is 'opinion' makes the statement absolutely nonactionable, even though it might well remain defamatory, that is, injurious to reputation." Smolla, *supra* § 6.09[2], at 6–37. The statements quoted above are traditionally associated with statements of opinion rather than statements of fact. *See, e.g., Myers v. Boston Magazine Co.,* 380 Mass. 336, 403 N.E.2d 376, 377–80 (1980) (statement that sportscaster was the "only newscaster in town who is enrolled in a course for remedial speaking," *id.* 403 N.E.2d at 377, is obviously opinion). Further, the notice does not encourage readers to draw a particular negative inference. "Once a court needs to speculate concerning the meaning the statement purports to convey, as must be done here, we enter the area of opinion as opposed to factual assertion." *Bucher v. Roberts,* 198 Colo. 1, 595 P.2d 239, 241 (1979) (en banc). We do not need to decide whether the notice is constitutionally protected, *see id.,* or simply not actionable as a matter of law. *See Dunlap v. Wayne,* 105 Wash.2d 529, 716 P.2d 842, 847–48 (1986) (en banc). Under our Uniform Jury Instruction defining statement of fact and contrasting non-actionable opinion, the result would be the same. *See* SCRA 13–1004.

As a general proposition, then, common law defamation will lie for false statements of fact but not for those statements that are but fair opinion. *Mendoza v. Gallup Independent Co.*, 107 N.M. 721, 723, 764 P.2d 492, 494 (Ct.App.1988); Smolla, *supra* § 6.02[1]. Whether statements are capable of a defamatory meaning is initially a question of law for the district court. *Mendoza*, 107 N.M. at 724–25, 764 P.2d at 495–96. New Mexico appears to be among the states requiring "verifiability as the controlling element" in determining whether a statement is fact or opinion. Smolla, *supra* § 6.07[1], at 6–25 n. 135 (citing *Marchiondo v. Brown*). Under this analysis, opinions are statements which cannot be proved or disproved. Smolla, *supra* § 6.07[1], at 6–25; *cf. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 2706–07, 111 L.Ed.2d 1 (1990) (as a matter of constitutional law, a statement on matters of public concern must be provable as false in order to be libelous).

"No task undertaken under the law of defamation is any more elusive than distinguishing between [fact and opinion]." Sack, *supra* at 155 (footnote omitted). A number of courts have struggled to identify an appropriate test. *See generally* Smolla, *supra* § 6.03[8], at 6–16.14 (discussing lower court interpretations of *Milkovich*). Under *Marchiondo v. Brown*, we look no further than the requirement of "verifiability."

We think readers would have understood the notice, particularly in context, as an expression of opinion. *See generally Wheeler v. Nebraska State Bar Ass'n*, 244 Neb. 786, 508 N.W.2d 917, 921–22 (1993) (discussing "totality of the circumstances" test), *cert. denied*, —— U.S. ——, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). We conclude that Moore failed to establish what the Nebraska Supreme Court has described as the threshold question: "whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion." *Id.* 508 N.W.2d at 921. The June 7 notice stated facts and expressed opinions from which readers might have drawn the inference that the author of the notice held and intended to convey a negative opinion

about Moore. The notice, however, did not imply a "provably false factual assertion."

## B. Invasion of Privacy
### (1) Preservation

On appeal Moore argues that the June 7 notice invaded his privacy by giving unreasonable publicity to his private life and by publicizing a matter that placed him in a false light. Moore claims "[t]he June letter Defendants sent to all attorneys in Lea County gratuitously included the information that the *News–Sun* had fired [him] because he had implemented an unpopular fee for legal affidavits, which decision resulted in economic loss to the newspaper." Moore argues his discharge was a private matter and that the letter offered false reasons for his discharge.

As Defendants note, Moore made a somewhat different argument to the district court. In his complaint he alleged that Defendants Sun and Shearman used his name to mitigate "alleged losses and damages in advertising revenues and customer confidences" by suggesting that he was responsible for those losses and damages. The complaint alleges that this conduct placed Moore in a false light. Moore's written response to Defendants' motion for summary judgment contains an argument based on the allegations of the complaint. Defendants contend that the invasion of privacy issue raised on appeal is not the same issue pled and argued to the district court and that it is not properly before us. *See* SCRA 12–216(A). We disagree. We think that Moore's argument on appeal encompasses the argument pled and argued to the district court. Thus, we conclude that the district court had a fair opportunity to rule on the argument. *See id.* For this reason, we hold that the issue was preserved.

### (2) Invasion of Privacy Categories

Although the New Mexico appellate courts have occasionally been called upon to consider whether an invasion of privacy occurred, it has never been necessary to make clear distinctions among the various categories into which this tort may be divided. *See, e.g., Hirth v. Hall*, 96 N.M. 58, 60, 627 P.2d 1257,

1259 (Ct.App.1981) (no showing of either a physical intrusion or publicity placing plaintiff in a false light); *McNutt v. New Mexico State Tribune Co.,* 88 N.M. 162, 166, 538 P.2d 804, 808 (Ct.App.) (plaintiffs alleged an invasion of their " 'right to seclusion' " and " 'public disclosure of personal matters of private life' "), *cert. denied,* 88 N.M. 318, 540 P.2d 248 (1975). Professor Smolla recently summarized the four categories, originally set forth by Dean Prosser, as follows:

(1) *False Light Invasion of Privacy.* The essence of this tort, a close cousin of defamation, is the placing of another "in a false light in the public eye."

(2) *Intrusion.* This tort, distinct from but related to trespass, involves an invasion of the plaintiff's "private" space or solitude—eavesdropping on private conversations or peeping through the bedroom window, for example.

(3) *Publication of Private Facts.* This tort involves the publication of true but intimate or private facts about the plaintiff, such as matters concerning the plaintiff's sexual life or health. Since it is premised on publication of facts that are private but nonetheless true, it is the most problematic of the privacy torts in terms of reconciliation with the first amendment.

(4) *The Right of Publicity or Appropriation.* Invasion of the "right of publicity," also known as "appropriation," consists of the exploitation of the plaintiff's name or likeness, usually for commercial gain, as in the unauthorized use of the plaintiff's name in an advertising endorsement for a product.

Smolla, *supra* § 10.01[2], at 10–3. While any such categorization can be criticized as having the potential to inhibit the growth of the common law, 2 Fowler V. Harper et al., *The Law of Torts* § 9.6, at 633–34 n. 3 (2d ed. 1986), the Prosser framework has frequently provided a useful tool for courts attempting to analyze such claims, *see, e.g., Lugosi v. Universal Pictures,* 25 Cal.3d 813, 160 Cal. Rptr. 323, 603 P.2d 425, 428 (1979) (en banc); *Rinsley v. Frydman,* 221 Kan. 297, 559 P.2d 334, 339 (1977), and has been generally adopted in *Restatement (Second) of Torts*

§ 652 (1977). This Court also found the framework helpful in identifying the potential categories within which the tort known generally as invasion of privacy might be divided. *See McNutt,* 88 N.M. at 165–66, 538 P.2d at 807–08. We rely on it now.

On appeal Moore's invasion of privacy arguments appear to raise two distinct invasion of privacy claims. In arguing that Defendants gave unreasonable publicity to his private life, Moore notes that the June 7 notice disclosed that he had been fired. This argument, based on the third theory set forth by Professor Smolla, was not the basis of the claim Moore pled and argued in district court. In arguing that Defendant placed him in a false light, Moore contends that the June 7 notice gave false reasons for discharging him. This argument, based on the first theory set forth by Professor Smolla, was pled and argued at trial as well as on appeal.

### (3) False Light

 As noted, the false light argument is closely related to Moore's claim of defamation. As we noted above, Moore has argued that the notice defamed him by imputing to him unfitness as a publisher. We have already determined that the notice was not defamatory as a matter of law.

It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position.

*Restatement (Second) of Torts* § 652E cmt. b, at 395.

Finally, we are persuaded that a reasonable fact-finder might determine that the June 7 notice portrayed Moore in a false light. The notice does not say that all of the newspaper's difficulties were traceable to Moore, but the notice begins by stating that the decision regarding the affidavit fee was reversed after Moore departed, continues with the statement that those remaining on the paper were left to "pick up the pieces," and closes by inviting those who received the notice to join those remaining to make the paper the "centerplace" for legal advertising.

As organized and stated, the notice permits inferences that Moore pursued the affidavit fee policy over the objections of others involved in management, that the affidavit fee policy was a critical management decision in the paper's financial decline, and that Moore was discharged as a result of the decision. Moore in effect contends that these are not legitimate inferences and that Defendants knew they were not. If he is able to prove his contentions, we think he has shown facts from which a jury could conclude that he was placed in a "false light ... [that] would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652E(a); *see Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa.Super. 66, 543 A.2d 1181, 1189 (Ct.) (false light claim may be established where true information published if the information tends to imply falsehoods), *appeals denied*, 520 Pa. 597 and 520 Pa. 606, 552 A.2d 251 *and* 552 A.2d 252 *and* 552 A.2d 968 (1988), *and cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *Jonap v. Silver*, 1 Conn.App. 550, 474 A.2d 800, 806 (Ct.1984) (jury verdict sustained where there was evidence that defendants caused letter to be published in a magazine that attributed to plaintiff views that were not his own and that there was a major misrepresentation of his character, history, activities, or beliefs).

Defendants have argued that they showed the essential truth of any statements of fact contained in the June 7 notice. We disagree. The question of the effect of the affidavit fee on the financial status of the paper is in dispute. Further, the suggestion that the affidavit fee was a decision for which Moore was solely responsible is not a fact Defendants established in moving for summary judgment.

## IV. PUBLISHERS' AUXILIARY ARTICLE

The *Publishers' Auxiliary* article contains four statements on which Moore relies in claiming Woodhatch defamed him in the course of the interview that resulted in the *Publishers' Auxiliary* article. First, the article described Moore as having "dreamed up" the affidavit fee. Second, the article indicated Moore sought forty times more in settlement than he had been offered. Third, the article said Woodhatch described Moore as having singlehandedly driven the *Hobbs Daily News–Sun* to financial ruin. Finally, the article indicated the implementation of the fee caused financial losses to the newspaper.

Woodhatch contends that the statements are constitutionally-protected opinion under the United States Supreme Court opinion in *Milkovich*. *See also* SCRA 13–1004 (statement of fact defined and opinion contrasted). In *Milkovich*, however, the Court rejected a "wholesale defamation exemption for anything that might be labeled 'opinion.'" 497 U.S. at 18, 110 S.Ct. at 2705. The court recognized that some expressions of opinions "may often imply an assertion of objective fact." *Id.* "The *Milkovich* test establishes when a statement of opinion constitutes privileged speech under the First Amendment; thus, it does not establish a test for defamation by implication, but merely sets the constitutional parameters that limit defamation suits." *Conroy v. Kilzer*, 789 F.Supp. 1457, 1461 (D.Minn.1992); *see also* Smolla, *supra* § 6.01[2]. We conclude that the article contained more than constitutionally-protected opinion.

If verifiability provides the litmus to distinguish between fact and opinion, the *Publishers' Auxiliary* article contains three statements that are clearly statements of facts. These are the statements concerning the amount Moore demanded in settlement, that the implementation of the fee caused financial losses, and that the fee was Moore's invention. The article contains a fourth statement that might have been understood as opinion, but also might be viewed as implying the existence of supporting facts. That statement is the observation that Moore drove the paper to ruin.

Woodhatch does argue that he proved the truth of the statement that the idea of the fee was originally Moore's. Moore's deposition supports this contention, and thus Woodhatch's true statements do not form a basis for a defamation claim. *See Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 805–06, 780 P.2d 627, 631–32 (1989).

The statements that Moore drove the paper to financial ruin might be viewed as

opinion based on the existence of undisclosed facts, and under SCRA 13–1004, "an opinion which implies that it is based upon the existence of undisclosed facts is the same as a statement of fact." In *Marchiondo v. Brown*, the Court said that "'where the alleged defamatory remarks could be determined either as fact or opinion, and the court cannot say as a matter of law that the statements were not understood as fact, there is a triable issue of fact for the jury.'" 98 N.M. at 404, 649 P.2d at 472 (quoting *Bindrim v. Mitchell*, 92 Cal.App.3d 61, 155 Cal.Rptr. 29, 39, *cert. denied*, 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979)). We conclude that this statement involved a triable issue of fact for the jury and precluded summary judgment for Woodhatch. We also conclude that a jury might determine that the statements concerning the amount Moore demanded in settlement and that implementation of the fee caused financial losses would "expose [Moore] to contempt" or harm his reputation, *see* SCRA 13–1007 (defining defamatory communication), when those statements were coupled with the statement that Moore had driven the paper to financial ruin. Thus, these statements also raise triable issues of fact for the jury.

Woodhatch also argues that because the comments were made in a trade publication and related to ongoing litigation that the article would have been understood to have included opinion rather than fact. *See Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1042–46 (10th Cir.1990) (article published about a copyright infringement suit, in which defendant commented on merits of plaintiff's claim, held not libel per se; partial summary judgment dismissing defamation claim sustained); *see also Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980) (defendant's characterization of a lawsuit in a statement and press release was held to be opinion rather than fact; summary judgment on claim for defamation sustained). Woodhatch contends that he was entitled to summary judgment as a matter of law. We disagree. The argument is relevant only to the statement that Moore drove the paper to financial ruin, and the cases cited are distinguishable. In both cases, the Court noted that the issue was one of law for the trial court. *Kleier Advertising, Inc.*, 921 F.2d at 1045; *Information Control Corp.*, 611 F.2d at 783. As we have indicated, that is not the situation on these facts in this jurisdiction. *See Marchiondo v. Brown*, 98 N.M. at 404, 649 P.2d at 472.

Finally, Woodhatch argues that the decision granting summary judgment should be affirmed because he established the truth or essential truth of the statements. That was not the basis of the motion for summary judgment, and thus we cannot affirm on that ground.

## V. CONCLUSION

The decision granting summary judgment to Sun, Carter, and Shearman for defamation based on the June 7 notice is affirmed, but the decision granting them summary judgment for invasion of privacy based on that notice is reversed. The decision granting summary judgment to Woodhatch for defamation based on the *Publishers' Auxiliary* article is reversed; the cause is remanded for further proceedings consistent with this opinion. Moore shall recover his appellate costs against Defendants.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.