2003-NMCA-006

61 P.3d 855

**Jay Courtney FIKES, Ph.D., Plaintiff–Appellant,**

v.

**Peter T. FURST, Ph.D., Defendant–Appellee.**

**No. 20,717.**

Court of Appeals of New Mexico.

Nov. 18, 2002.

Certiorari granted, No. 27,824, Jan. 13, 2003.

David M. Overstreet, Overstreet & Associates, P.C., Alamogordo, NM, for Appellant.

Michael W. Brennan, Madison, Harbour, Mroz & Brennan, P.A., Albuquerque, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} This case concerns a personal feud that began in the 1980s. Plaintiff and Defendant are both professors holding doctorate degrees. Each steadfastly believes that the other is out to destroy his reputation and career. After much contention between the two, Plaintiff brought this defamation action. We affirm in part and reverse in part the district court's grant of summary judgment in Defendant's favor on the defamation counts, and reverse as to the tortious interference with contract count.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} The parties' dispute began when Plaintiff challenged the validity of certain observations Defendant made of the Huichol Indians in Mexico in the 1960s. Defendant and others reportedly observed practices including peyote enemas and waterfall jumping. Plaintiff studied the Huichol Indians in the late 1970s and early 1980s, and questioned the accuracy and legitimacy of Defendant's reports. Eventually, Plaintiff began a crusade, spanning more than a decade, to discredit Defendant's work.

{3} Defendant, sensitive to Plaintiff's academic fraud claims, and responding to the threat he perceived to his long academic career, embarked on a similar quest to discredit Plaintiff. Over the course of a decade or more, Defendant made various derogatory statements about Plaintiff, some of which became the subject of the defamation cause of action in this case.

{4} In addition, Plaintiff had a contract with Madison Books to publish a book he had written, entitled *Carlos Castaneda: Academic Opportunism and the Psychedelic Sixties,* that criticized Defendant's findings concerning the Huichol Indians. On April 1, 1992, Defendant wrote a letter to Madison Books threatening to sue if it published Plaintiff's book. Madison Books then declined to publish Plaintiff's book, in a letter to Plaintiff dated November 11, 1992. Defendant's letter provides the basis for Plaintiff's claim of tortious interference with contract.

{5} Plaintiff's amended complaint presented seven causes of action. Over the course of the litigation, the district court granted Defendant's motion for summary judgment on all counts. On appeal, Plaintiff challenges only the grant of summary judgment on Counts I and V, the defamation and tortious interference with contract claims. Plaintiff does not appeal the grant of summary judgment on the other counts.

## II. DEFAMATION

### A. Standard of Review

■ {6} We review the grant of summary judgment de novo. *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.;* Rule 1–056(C) NMRA 2002. We consider the issues in the light most favorable to the nonmoving party. *Ruiz v. Garcia,* 115 N.M. 269, 271, 850 P.2d 972, 974 (1993).

### B. Statute of Limitations

■ {7} At the outset, we address Defendant's argument that several of the alleged defamatory statements were made outside of the applicable statute of limitations

period. The statute of limitations for a defamation claim is three years. NMSA 1978, § 37–1–8 (1976). The statute of limitations runs in a defamation case from the point of publication of the defamatory statement. *See Benally v. Hundred Arrows Press, Inc.*, 614 F.Supp. 969, 981 (D.N.M.1985), *rev'd on other grounds sub nom Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618 (10th Cir.1988). It is Defendant's burden to show sufficient facts to establish a statute of limitations defense. *See Romero v. Ole Tires, Inc.*, 101 N.M. 759, 761, 688 P.2d 1263, 1265 (Ct.App.1984).

{8} Here, two limitation periods are applicable. Plaintiff filed his initial complaint on February 15, 1996, alleging that Defendant's statements in a June 22, 1995, letter to Dr. Joseph C. Winter defamed Plaintiff. The statements in this letter are not time-barred because they were made less than three years before Plaintiff filed his complaint. However, on June 25, 1997, Plaintiff filed an amended complaint, which added claims that Defendant defamed Plaintiff in various other statements not included in the June 1995 letter to Winter. Because the amended complaint cited facts, conduct, and injuries not found in the original, it did not relate back to the date the original complaint was filed. *See Raven v. Marsh*, 94 N.M. 116, 118, 607 P.2d 654, 656 (Ct.App.1980). Therefore, to be actionable, these statements had to have been made after June 25, 1994, or within the three years preceding the date Plaintiff filed his amended complaint.

{9} Defendant argues in particular that three allegedly defamatory statements he made to Dr. Earl Joseph Volk were time-barred. We agree. These statements to Volk, a member of the Friends Committee for National Legislation, were that Plaintiff was a "lousy anthropologist"; Plaintiff was "incapable of doing a competent job on the Zingg manuscript"; and Plaintiff was "paranoid." In Volk's March 6, 1997, deposition, which Plaintiff cites for these statements, Volk stated that seven years had passed since his conversation with Defendant. Moreover, Plaintiff does not offer any contrary evidence in his reply brief, instead making only a conclusory assertion that all of the statements were "made within the applicable statute of limitations." *See State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) (noting the Court's refusal to address issues unsupported by cited authority and consisting of a mere conclusory reference). We hold that these statements fall outside the limitations period applicable here.

{10} Defendant maintains that his alleged statement that Plaintiff "committed unethical and professional misconduct" is also time-barred. Plaintiff gives two record citations for this statement. The first is to Defendant's deposition where he admitted making the statement, but not within the limitations period, and the other is to a 1989 letter to Plaintiff, copied to others. This is sufficient to make a prima facie case for the statute of limitations defense. Again, Plaintiff offers no contradictory evidence. We therefore hold this statement, too, was made outside of the three-year statute of limitations.

{11} Defendant also claims that his statement to Dr. David Maybury–Lewis that Plaintiff was "paranoid" fell outside the limitations period. Maybury–Lewis, the director of the organization Cultural Survival, stated in his affidavit that Defendant told him this in November 1993. Under *Raven*, 94 N.M. at 118, 607 P.2d at 656, this statement is also time-barred, as it was made more than three years prior to the filing of the amended complaint and does not relate back.

{12} Defendant also states that Plaintiff's claim that he called Plaintiff a "racist" is time-barred. Plaintiff cites to a letter from 1992 in support of the allegation. To the extent that the claim rests on this letter, it clearly is time-barred.

{13} Defendant also claims that other statements, which he denies having made within the applicable statute of limitations period, should not be considered. Defendant was unable to say whether he had made statements that Plaintiff is "delusional" and "beset by devils," "has little grasp on reality," or "crazy" within the previous three years. As for the statement that Plaintiff "attempted to blackmail" Defendant, Defendant similarly was uncertain, stating that he did not think he had made the statement within three years. This uncertainty is in-

sufficient to make a prima facie case that the statements were not made within the limitations period. Therefore they are not time-barred.

## C. The Law of Defamation

{14} In New Mexico, the plaintiff in a defamation case must prove nine elements of the tort. UJI 13–1002(B) NMRA 2002. In this case, the following elements are at issue with respect to some or all of the alleged defamatory statements:

(2) whether the communication was defamatory;

(3) whether the communication contains a statement of fact;

(4) whether the person receiving the communication understood it to be defamatory; and

(5) whether the communication proximately caused actual injury to plaintiff's reputation.

UJI 13–1002(B)(5), (2), (6), (8). As we address the alleged defamatory statements, we discuss only those elements that are argued with respect to each statement.

### 1. Defamatory Meaning

{15} The Court must first determine whether the communication in question has a defamatory meaning. "At common law, a statement is considered defamatory 'if it has a tendency to render the party about whom it is published contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him.'" *Andrews v. Stallings,* 119 N.M. 478, 482, 892 P.2d 611, 615 (Ct.App.1995) (quoting *Bookout v. Griffin,* 97 N.M. 336, 339, 639 P.2d 1190, 1193 (1982)). The jury instructions similarly but more accessibly advise that "[d]efamatory communications are those which tend to expose a person to contempt, to harm the person's reputation, or to discourage others from associating or dealing with [him]." UJI 13–1007 NMRA 2002. This is to be determined based on the plain and obvious meaning of the communication. *Id.; Moore v. Sun Publ'g Corp.,* 118 N.M. 375, 380, 881 P.2d 735, 740 (Ct.App.1994).

{16} While sometimes a communication is so obviously defamatory that it is deemed defamatory as a matter of law, often the statement is merely capable of a defamatory meaning. In the latter situation, the question of whether the communication was defamatory is left to the jury. *See Marchiondo v. Brown,* 98 N.M. 394, 404, 649 P.2d 462, 472 (1982); UJI 13–1007 Directions for Use.

### 2. Fact Versus Opinion

{17} Statements of mere opinion are not actionable for defamation. *Brown,* 98 N.M. at 404, 649 P.2d at 472. This is so because, as the Supreme Court observed in *Gertz v. Robert Welch, Inc.,* "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In order to support a defamation claim, the communication at issue must contain a statement of fact, or imply that it is based upon the existence of undisclosed facts. UJI 13–1004 NMRA 2002. The fact/opinion determination, however, is a fact-specific one that must be resolved for each statement. *Brown,* 98 N.M. at 401, 649 P.2d at 469. The fact finder is directed to consider "[t]he entirety of the communication and the context in which the communication was made" and "[w]hether reasonable persons would be likely to understand the communication to be a statement of the defendant's opinion or a statement of fact." UJI 13–1004.

{18} As many courts and commentators have noted, the distinction between fact and opinion is often elusive. *See Moore,* 118 N.M. at 382, 881 P.2d at 742. In addition to the two factors set out in the UJI, most courts, including ours, have followed the United States Supreme Court opinion in *Milkovich v. Lorain Journal Co.* by adding the consideration of whether the statement is verifiable. 497 U.S. 1, 19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *see Andrews,* 119 N.M. at 485, 892 P.2d at 618. If the statement is verifiable, it is fact and not opinion. While the *Milkovich* case involved a plaintiff

deemed a public figure, a media defendant, and a statement relating to matters of public concern, the assurance that a statement "must be provable as false before there can be liability under state defamation law" is instructive even in private defamation cases such as this.[1] *See also Andrews,* 119 N.M. at 486, 892 P.2d at 619 (stating that characterizing problems at motorcycle rally as a "big deal" not actionable because not provable as false); *Moore,* 118 N.M. at 382, 881 P.2d at 742 (describing opinions as "statements which cannot be proved or disproved").

{19} The role of this Court, therefore, is to determine whether the communications were unambiguously fact or unambiguously opinion. *Brown,* 98 N.M. at 404, 649 P.2d at 472. If we can say that a communication was wholly opinion, it is not actionable as a matter of law. If it is apparent that the statement was factual or clearly implicated a factual basis, then we proceed to determine whether it meets the other threshold requirements of the tort of defamation, and whether genuine issues of material fact exist so that it should go to the jury.

### 3. Understanding by the Recipient

{20} If the statement is susceptible to a defamatory meaning and may be factual or imply a factual basis, then it must be determined whether the recipient understood the communication to be defamatory. Uniform Jury Instruction 13–1008 requires that "the defamatory meaning of the communication must be understood by the person to whom it was communicated.... It is what the recipient of the communication reasonably understood the meaning to be that controls; not what the defendant may have intended to convey." UJI 13–1008 NMRA 2002. "If a defamatory statement is made to a person who knows that the statement is untrue, then a publication has not occurred." *Silverman v. Progressive Broad., Inc.,* 1998–NMCA–107, ¶ 23, 125 N.M. 500, 964 P.2d 61.

{21} Defendant argues that none of the recipients of the alleged defamatory communications believed them, and therefore none of the statements are actionable. In no other sense does Defendant deny that the statements were published to third parties. *See* UJI 13–1003 NMRA 2002 ("Publication is an intentional or negligent communication to one other than the person defamed.").

### 4. Resulting Damages

{22} Defendant also contends that Plaintiff has failed to prove he suffered any damages. Damages are predicated on "actual injury proximately caused [to Plaintiff] by the defamatory communication." UJI 13–1010 NMRA 2002. Plaintiff submitted an affidavit to the court that stated he had suffered humiliation, stress, and mental anguish as a result of Defendant's defamatory statements to his colleagues. The affidavit also outlines lost job opportunities and other consequences Plaintiff attributes to the alleged defamation. This affidavit is sufficient to create an issue of material fact with respect to damages resulting from those statements we hold below to be actionable, leaving damages an issue that must be decided by a jury.

{23} We now turn to the statements themselves, and address them each with respect to the three remaining contested elements of defamation.

### D. The Alleged Defamatory Statements

#### 1. "Lousy Anthropologist"

{24} Defendant made the statement that Plaintiff was a "lousy anthropologist" in a letter to Winter, the University of New Mexico anthropologist who organized the Huichol Indian Assistance Program. On its face, this statement is susceptible to a defamatory meaning. We next ask whether it is a statement of fact or of opinion. We hold that a reasonable person hearing this accusation would not accept it as fact, but rather determine it to be the personal opinion of one anthropologist. *See Brown,* 98 N.M. at 401, 649 P.2d at 469; *Valentine v. N. Am. Co.,* 16

---

1. We note that Defendant does not contend that he is a public figure or limited public figure, such that Plaintiff would have the burden of proving that the statements were made with a more malicious intent than mere negligence. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

Ill.App.3d 277, 305 N.E.2d 746, 749 (1973) (calling someone a "lousy agent" commonly is non-libelous name-calling). Nor does this statement imply facts such that the statement is actionable. *See Brown,* 98 N.M. at 404, 649 P.2d at 472. Therefore, this statement is non-actionable opinion, and we need not continue its analysis.

### 2. Unqualified to Work on the Huichol Indian Assistance Project

{25} According to the deposition testimony of Dr. Bruce Bernstein, Defendant "on more than one occasion went through a litany of reasons why [Plaintiff] was unqualified" for the Huichol project. Bernstein was the Chief Curator and Assistant Director of the Museum of New Mexico, and was interested in Plaintiff's effort to publish Robert Zingg's manuscript, "Huichol Mythology." Dr. Joan O'Donnell of the School of American Research also stated that Defendant told her that there was a project he thought Plaintiff was unqualified for. The statements to Bernstein in particular are defamatory per se, because they plainly impute to Plaintiff "unfitness to perform duties of office or employment for profit" and/or "some falsity which prejudices plaintiff in his or her profession." *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 429, 773 P.2d 1231, 1236 (1989). Not only did these statements speak directly about Plaintiff's professional qualifications, or lack thereof, Defendant himself admitted that such statements would be false. The defamatory nature of these statements is prima facie apparent.

{26} There is also a question of fact as to whether these were opinions or factually based statements. The specificity of the statement that Plaintiff was "unqualified for a particular job" implies that he lacked specific required credentials. This question is sufficiently susceptible to verification, that is, being proven true or false, that a jury should make that determination.

{27} Defendant also argues that Bernstein did not believe these statements, so they could not meet the "understanding by recipient" aspect of defamation. We disagree with Defendant's formulation of this element. The UJI considers a statement to be "unpub-

lished" if the recipient knew it to be untrue. UJI 13–1003. We find nothing in Bernstein's deposition to indicate that he knew the statements to be untrue. To the contrary, Bernstein stated that the tension between the parties affected his relationship with both parties and he was inclined to take "steps backward" from both of them. He also described Defendant as an "elder statesman of anthropology and respected for the work he did amongst Huichol people." Given this context, there is a factual dispute for the jury to resolve as to whether Bernstein knew the statements to be untrue. These statements should have gone to a jury.

{28} As to the statement made to O'Donnell, it is too vague to be evaluated or found defamatory. Therefore, it is non-actionable. *See Leyba v. Renger,* 874 F.Supp. 1218, 1221 (D.N.M.1994) (holding statement "Leyba did not have the full support of the men in the anesthesia group" not defamatory because it was vague, had elements of fact and opinion and did not specifically address professional skills or credentials); *Andrews,* 119 N.M. at 485, 892 P.2d at 618 (holding that plaintiffs must plead alleged defamatory statements with precision).

### 3. "Religious Fanatic"

{29} Dr. Kelly Klein read the June 22, 1995, letter Defendant wrote to Winter, gleaning from it the information that Plaintiff was a "religious fanatic." This statement, however, is not contained in that letter. That letter refers to "fanaticism," but not in conjunction with Plaintiff's purported religious beliefs. Given the lack of evidence that this statement was made as Plaintiff claims, Plaintiff is unable to support his contention that this communication was either defamatory or published. Therefore, we will not address this alleged statement further, and we hold that summary judgment was properly granted with respect to it.

### 4. "Anti–Semitic"

{30} Both Bernstein and O'Donnell stated that Defendant told them he thought Plaintiff was anti-Semitic. The accusation that Plaintiff was anti-Semitic is non-actionable opinion. Recognized treatises on defa-

mation as well as a majority of jurisdictions that have addressed this issue have reached the same conclusion. *See, e.g.,* 1 Robert D. Sack, *Sack on Defamation,* § 2.4.7 (3d ed.2001) (stating charges of bigotry or racism ordinarily are not actionable); *Ward v. Zelikovsky,* 136 N.J. 516, 643 A.2d 972, 980–81 (1994) (concluding statement that plaintiff hated Jews not actionable); *Condit v. Clermont County Review,* 110 Ohio App.3d 755, 675 N.E.2d 475, 478 (1996) (holding statement that plaintiff was anti-Semitic not actionable); *Rambo v. Cohen,* 587 N.E.2d 140, 148–49 (Ind.Ct.App.1992) (same). Such statements are not actionable because they are hyperbolic and ambiguous as well as unverifiable. According to the Ohio Supreme Court, when a "statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content." *Vail v. Plain Dealer Publ'g Co.,* 72 Ohio St.3d 279, 649 N.E.2d 182, 186 (1995) (citation and internal quotation marks omitted). The term "anti-Semite" is not verifiable because it represents a clearly subjective point of view. *See id.* The only verification of a person's bigoted motives is in the mind and conscience of that person.

{31} Plaintiff argues that the statement that someone is "anti-Semitic" is factual because it implies specific, undisclosed, defamatory facts. *Brown,* 98 N.M. at 404, 649 P.2d at 472. The implication that Plaintiff may have done or said something Defendant perceived as anti-Semitic does not alter our analysis. Plaintiff's motives are not verifiable.

### 5. "Racist"

{32} Plaintiff cites Defendant's deposition testimony in support of his allegation that Defendant called him a "racist." In his deposition, Defendant answered the question whether he called Plaintiff a racist by stating "only in the sense that he called the Huichols dirty and nosy and so forth." Because Plaintiff does not offer evidentiary support for his allegation that the statement was made and published, this statement is not actionable.

### 6. "Ethnocentric"

{33} The sole record support Plaintiff cites for this claim is Defendant's deposi-

tion, in which he admitted that he had called Plaintiff "ethnocentric" within the previous three years. Whether this statement might have a defamatory meaning must be considered in context. *See Marchiondo v. N.M. State Tribune Co.,* 98 N.M. 282, 288, 648 P.2d 321, 327 (Ct.App.1981), *overruled on other grounds by Brown,* 98 N.M. at 404, 649 P.2d at 472. While the specific context of the statement was not presented at the summary judgment stage, the entire context of the debate between Plaintiff and Defendant revolves around issues of Huichol culture and sensitivity. In such a context, a charge of ethnocentricity may well be defamatory. We do not find it defamatory as a matter of law. *Marchiondo,* 98 N.M. at 287, 648 P.2d at 326.

{34} In determining whether such a comment is fact or mere opinion requires an evaluation of "(1) the entirety of the publication; (2) the extent that the truth or falsity may be determined without resort to speculation; and (3) whether reasonably prudent persons reading the publication would consider the statement as an expression of opinion or a statement of fact." *Brown,* 98 N.M. at 401, 649 P.2d at 469. Because Plaintiff's evidence does not elucidate the context or the audience of the statement, we are unable to determine it to be opinion or factual in nature. Therefore, Plaintiff fails to meet his burden as stated in UJI 13–1002.

### 7. "Christian Fundamentalist"

{35} Plaintiff's allegation that Defendant called him a "Christian fundamentalist" also is lacking in factual support. Plaintiff cites Stacy Schaefer's deposition for this communication. That deposition, however, does not even use the words "Christian fundamentalist." Because Plaintiff has failed to provide adequate record support for the existence of the statement, the statement is not actionable for defamation. UJI 13–1002.

### 8. Statements About Plaintiff's Mental State

{36} We need not address these statements separately, because they all are non-actionable opinion statements. These

statements describe Plaintiff as "pursuing a half-assed fantasy," "pursuing a bizarre obsession," "paranoid," "delusional," "beset by devils," "crazy," and "[having] little grasp on reality." Even if they satisfied the other elements of defamation, none of these statements is objectively verifiable. *See Andrews*, 119 N.M. at 486, 892 P.2d at 619 (characterizing problems as a "big deal" cannot be proved false, so statement not actionable). Nor can their truth or falsity be determined without resort to speculation. *See Brown*, 98 N.M. at 401, 649 P.2d at 469. Defendant's assessments or interpretations of Plaintiff's mental state are not actionable because they are reasonably considered expressions of opinion. In some contexts, such statements about another's mental state could qualify as statements of fact. *See* 1 Robert D. Sack, *Sack on Defamation*, § 4.3.1. For example, a statement made by a psychiatrist or other mental health professional might require a different analysis. The statements here, when taken in their context as statements by one anthropologist about a rival anthropologist, are not reasonably interpreted as factual.

9. Made "Some Threat Against the Faculty"

**** {37} The evidence Plaintiff cites for this alleged defamatory statement is Bernstein's statement that "I believe there was something in there where [Plaintiff] had finished his dissertation or was writing his dissertation and there was some disagreement between he [sic] and his faculty members and there was some threat against the faculty[.]" This may be susceptible to a defamatory meaning, but we hold that it is too vague to be actionable. The nature of the "threat" is unclear and could refer to a threat of violence, a lawsuit, or any other action. As is noted above, such a vague statement is not actionable as defamation. *See Andrews*, 119 N.M. at 485, 892 P.2d at 618 (holding plaintiffs must plead alleged defamatory statements with precision).

{38} Even if actionable, there is insufficient evidence to support Plaintiff's contention that the statement had a defamatory meaning. The context of the statement re-

veals that Defendant's meaning of "threat" was not of physical violence, but "a battle of words and letters" among anthropologists. Bernstein explained that Defendant's statements occurred "in defending anthropology" and stated that "it's quite common those things happen." Given this context, it does not appear that this kind of statement would make Plaintiff an object of public scorn. *See Andrews*, 119 N.M. at 482, 892 P.2d at 615. Therefore, the statement was not actionable, and the district court was correct in granting summary judgment for Defendant on this statement.

10. Statements Pertaining to University of Michigan

**** {39} Plaintiff received his doctoral degree from the University of Michigan. Plaintiff alleges that Defendant made three statements regarding Plaintiff's academic credentials and relationship with the University of Michigan. Defendant allegedly asserted that the University of Michigan "disowned" Plaintiff, "didn't want anything to do with him," and was "sorry they had ever given him or provided him with a doctor's degree."

{40} These statements are all susceptible to a defamatory meaning. There was deposition testimony about the importance of one's affiliation with one's academic institution and the ability to obtain recommendations from that institution in order to secure employment. Therefore, at least in the academic context of this dispute, such comments could harm Plaintiff's reputation or discourage others from associating or dealing with him. *See* UJI 13–1007.

**** {41} These statements can also be construed as factual. Statements that imply the speaker's reliance on specific, undisclosed facts are considered factual for these purposes. UJI 13–1004; Restatement (Second) of Torts § 566, cmt. c (1976). Not only is there an implication that this information came from the Michigan faculty, but Defendant stated that he had received this information from the chair of the anthropology department at Michigan.

{42} Defendant argues that the recipients of these communications did not believe them. "Belief," however, is not the standard. According to UJI 13–1008, the requirement is that the actual audience understood the communication to have a defamatory meaning. Even though one recipient, O'Donnell, stated she did not "believe" the statements, she acknowledged they were "extreme" ad hominem attacks. The fact that Defendant's statements caused Bernstein "to have a much more cautious approach" in his dealing with Plaintiff implies that he understood the statements to be defamatory.

{43} Based on the foregoing, we hold that the challenged elements of defamation in the Michigan statements are all open-fact questions that should have gone to a jury. We remand for further proceedings as to these statements.

11. Plaintiff Wrote a "Libelous" Book and "Attempted to Blackmail" Defendant

{44} The only record support Plaintiff cites for these statements is Defendant's deposition, in which he acknowledges having made the statements within the previous three years. Because Plaintiff does not offer evidence to indicate to whom these statements were made, we are unable to determine whether their defamatory meaning was understood. Because Plaintiff did not present evidence on all of the elements of the tort with respect to these statements, he did not meet his burden and summary judgment was proper.

III. TORTIOUS INTERFERENCE WITH CONTRACT

{45} Defendant's April 1, 1992, letter to Madison Books is the basis for Plaintiff's claim of tortious interference with contract. Tortious interference with contract requires Plaintiff to show that Defendant "used improper means or acted with an improper motive intended solely to harm [Plaintiff]." *Silverman*, 1998–NMCA–107, ¶ 28, 125 N.M. 500, 964 P.2d 61. This Court has defined " 'improper means' as actions which are innately wrongful or predatory in character." *Kelly v. St. Vincent Hosp.*, 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct.App.1984).

The issue here is whether a genuine issue of material fact exists concerning Defendant's motivation so as to preclude the grant of summary judgment. Plaintiff points out that Defendant had previously threatened to sue him over another dispute, but never acted on it. Plaintiff maintains that this prior "empty" threat is evidence of Defendant's improper motive in writing the letter, and lack of true concern about his reputation.

{46} Plaintiff also suggests that the evidence supports an inference that Defendant never had any intent to litigate the matter, even if Madison Books had published Plaintiff's book. Plaintiff's book was published by Millennia Press and Defendant has maintained that portions of the book are defamatory. Nonetheless, Defendant has not taken action against Millennia Press. One possible inference from these facts is that Defendant never intended to litigate and only threatened to do so in order to harm Plaintiff. If there is any dispute of material fact, this claim must go to the jury. *See* Rule 1–056. Here, the key question of Defendant's intent in writing to Madison Books is in question. Plaintiff has cited evidence to support an inference that Defendant merely sought to harm him.

{47} We also reject Defendant's argument that the letter did not cause Madison Books to abandon publication. Defendant suggests that Madison Books determined independently that the book was libelous in its current version. However, based on the communications from Madison Books itself, including a letter to Plaintiff stating "we have decided not to publish your proposed book" due to "threats of litigation," the jury could find that Defendant's letter precipitated the decision not to publish Plaintiff's book. Therefore, the district court erred in granting summary judgment on this count.

IV. CONCLUSION

{48} We reverse the district court's grant of summary judgment in favor of Defendant with respect to the following alleged defamatory statements: (1) unqualified to work on the Huichol Indian Assistance Project; (2) University of Michigan had "disowned" Plaintiff; (3) University of Michigan "didn't

want anything to do with him"; and (4) University of Michigan was "sorry they had ever given him or provided him with a doctor's degree." We also reverse summary judgment for Defendant on the tortious interference claim. We remand this case to the district court for further proceedings consistent with this opinion.

{49} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.