This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MARVENAR SMITH,**

Plaintiff-Appellant,

v.                                                                          **NO. 28,449**

**ENMRSH, INC., a New Mexico non-profit corporation,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen Quinn, District Judge**

Eric D. Dixon
Portales, NM

for Appellant

Miller Stratvert, P.A.
Ruth Fuess
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Plaintiff Marvenar Smith appeals the district court's grant of summary judgment in Defendant ENMRSH, Inc.'s favor. In granting summary judgment, the

district court concluded that the statute of limitations had run on Smith's claims for defamation of character and prima facie tort, that Smith failed to establish that an implied employment contract existed for purposes of her breach of employment contract claim, and that even if an implied contract existed, the consequence for Smith's misconduct was immediate termination. We affirm.

**BACKGROUND**

Smith was employed by ENMRSH as a community living coach from May 2002 until November 18, 2002. She worked as a part-time in-home assistant helping disabled persons, called "consumers" by ENMRSH, with their daily activities. On November 17, 2002, Smith and a co-worker were working with S.S., one of ENMRSH's consumers. At some point during the workday, Smith asked S.S. to move from a communal couch to S.S.'s personal chair due to some concerns that S.S.'s parents had about S.S. sitting on the community furniture. Apparently S.S. refused Smith's request, so Smith and her co-worker attempted to move S.S. to her chair. When S.S. continued to refuse to sit in her chair and began to struggle with Smith and the co-worker, S.S. was escorted to her room. A short time later, S.S. came out of her room and again tried to sit on the communal couch. According to Smith's co-worker, when S.S. sat on the couch, Smith grabbed S.S. by the arm, stood her up, and yelled, "I told you to sit in you [sic] fuckin [sic] chair and don't move." Smith then pushed

2

S.S. down into the chair, and when S.S. tried to get up and sit on the floor, Smith forcibly stood S.S. back up, pushed her into the chair, and began hitting the top of S.S.'s hand until S.S. started to cry and sit still. Smith laughed and told her co-worker that she hit S.S. on the hands because they do not bruise easily.

Sometime later that day, a nurse working for ENMRSH arrived at the home to dispense medications to S.S. The nurse noticed that S.S. was acting strangely and would not make direct eye contact. When the nurse left the home, Smith's co-worker came outside to talk. Smith's co-worker was visibly upset and told the nurse about Smith's abuse of S.S. The nurse advised the co-worker to report Smith to her supervisor. After the report was made, Smith's supervisor contacted her and told her that she was relieved of her duty for the night. The supervisor also advised Smith to report to the ENMRSH office the next morning to meet with Damian, one of ENMRSH's managers. The next morning, rather than going into see Damian as she had been told, Smith attempted to call Damian. According to Smith, she left eight messages on Damian's voicemail system, but she was never able to get in touch with him. Smith testified at her deposition that she did not go into the office because she did not want to see the co-worker who had made the report or the supervisor who had relieved her of her duty; she only wanted to talk to Damian.

That afternoon, Smith received a phone call from an ENMRSH supervisor advising her that she had failed to show up to a 1:00 p.m. meeting with Damian and that she was therefore going to be automatically terminated for the abuse of S.S. A few days later, Smith received a termination letter from ENMRSH advising her that she had been terminated based on the "sufficient and credible" evidence of abuse ENMRSH had received and that she was being reported to "the authorities" pursuant to the Department of Health regulations. The record does not reflect that Smith took any action to dispute her termination or the allegations of abuse.

Four years later, in October 2006, Smith applied for a job and was notified that the Children, Youth and Families Department (CYFD) had received a substantiated physical abuse referral on November 18, 2002. CYFD gave Smith an opportunity to submit documentation proving that she had been rehabilitated and that she no longer presented a danger, but it does not appear that Smith ever provided this information to CYFD. Apparently due to the information obtained from CYFD during the background check, Smith did not obtain the job that she had applied for.

Later that month, Smith filed a complaint against ENMRSH for breach of contract, defamation of character, and prima facie tort. Her claim for breach of contract alleged that ENMRSH's employee manual created an implied contract, the terms of which required ENMRSH to engage in progressive discipline before

4

terminating an employee. Smith also asserted that ENMRSH had defamed her by publishing statements that she had abused a consumer. After answering the complaint, ENMRSH filed a motion for summary judgment arguing that the three-year statute of limitations for injuries to reputation had already run and that the language of the employee guide was not sufficient to create an implied employment contract. The district court agreed and concluded that the statute of limitations had run in 2005 and that a disclaimer in the employee handbook prevented the formation of an implied contract. The court also concluded that ENMRSH's report to the Department of Health was a privileged communication and that ENMRSH was immune from liability unless the report was made in bad faith or with a malicious purpose. Finally, the court concluded that even if the handbook did rise to the level of an implied employment contract, progressive discipline was not required for the type of conduct that Smith engaged in.

**DISCUSSION**

"[T]he grant of a motion for summary judgment is a question of law that is reviewed de novo." *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798. Summary judgment is only appropriate "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 12, 145 N.M. 542, 202

P.3d 801 (internal quotation marks and citation omitted). When determining whether a genuine issue of fact exists, "[a]ll reasonable inferences from the record are construed in favor of the non-moving party" in order to protect the right to trial. *Id.* (internal quotation marks and citation omitted).

**Implied Employment Contract**

Smith argues that the district court erred in granting summary judgment on her breach of implied employment contract claims. Smith contends that whether an implied employment contract has been created is a question of fact and that a jury is entitled to determine whether, under the totality of the circumstances, ENMRSH's conduct modified the at-will employment relationship. Thus, Smith argues, the district court erred by concluding that the disclaimer in ENMRSH's employee guide, which stated that nothing in the handbook should be "taken as constituting an express or implied promise of continuing employment," prevented the formation of an implied employment contract.

As ENMRSH points out, however, the disclaimer in the handbook was not the only basis for the district court's decision. The court also noted that while the handbook provides progressive discipline for certain types of misconduct, the handbook requires automatic dismissal for acts such as the abuse of a consumer. ENMRSH argues that because Smith was accused of abusing a consumer, even if the

guide created an expectation that Smith would be subjected to progressive discipline for unsatisfactory job performance, the guide does not create such an expectation with respect to allegations of abuse. We agree and, for purposes of our analysis, we assume without deciding that the language of the employee guide is sufficient to create an implied employment contract.

The ENMRSH employee guide provides:

> If an employee's performance is unsatisfactory due to lack of ability or failure to fulfill the requirements of the job, the employee will be notified of the problem and the supervisor will work with the employee to correct the situation.

> If this does not succeed, the employee will be dismissed. If you are dismissed, you will be given an explanation by your supervisor. Discharges are always unpleasant and costly so you can be sure they won't be handled lightly. If you believe you have been treated unfairly, you have a right to ask for a review through the complaint procedure. Advance notice is not given to those employees discharged for cause or terminated within their try-out period. Discharge is immediate.

Following this explanation of the disciplinary process, the guide lists a number of "rules to work by." This section delineates forty-four rules that the employee must abide by and the consequences that will result if a rule is broken. The consequence for sixteen of the forty-four rules is dismissal. The consequence for the remaining twenty-eight rules ranges "[f]rom written correction to dismissal depending upon [the] nature of offense." The consequence for violating the first rule in the handbook, neglect, abuse, mistreatment, or improper treatment of consumers, is dismissal. Thus,

7

while the guide provides progressive discipline for unsatisfactory performance and certain types of employee misconduct, the guide does not provide such discipline for abuse, the type of misconduct of which Smith was accused.

In *Mealand v. Eastern New Mexico Medical Center*, 2001-NMCA-089, 131 N.M. 65, 33 P.3d 285, we addressed whether an employee handbook with similar language was sufficiently definite to create a reasonable expectation that employees could be terminated only after progressive discipline. In concluding that the employee manual at issue created an expectation that all terminations were subject to some sort of progressive discipline, we noted that the handbook provided a "list of examples of conduct that may result in disciplinary action or discharge." *Id.* ¶ 13. Importantly, the punishment for all of the examples of misconduct listed in the handbook was "disciplinary action or immediate discharge depending upon the circumstances or severity." *Id.* ¶ 3 (emphasis omitted). Here, in contrast, the ENMRSH employee guide provided different punishment for different types of offenses. While some offenses, like those in the employee handbook in *Mealand*, can result in a range of punishment from corrective action to dismissal, other offenses, like abuse of a consumer, can only be punished with dismissal. Because Smith was accused of violating a provision of the employee guidebook that required immediate dismissal,

ENMRSH fully complied with any contractual obligations it may have had when it terminated Smith.

Despite the clear language of the employee guide and the requirement that Smith be dismissed without any progressive discipline for the abuse of a consumer, Smith argues that other provisions of the handbook create a complaint procedure that in effect requires progressive discipline for employees regardless of the nature of the offense.  In addition, Smith contends that ENMRSH was not entitled to dismiss her without progressive discipline because "Smith denied that any act of abuse occurred," there "was no physical evidence," and "[S.]S. denied that there was anything wrong."

In support of her argument, Smith relies on an "[e]mployee's [c]omplaint" section of the handbook, which details a complaint resolution process that is to be used to "provide [an] effective and acceptable means to bring [an employee's] work related problems and complaints to [ENMRSH's] attention."  That section provides that "[i]t will be [ENMRSH's] policy to encourage an employee to tell his or her side of the story and give full consideration to the problem or complaint" and that "[t]he sole purpose of [the] complaint procedure is to help [the employee] work out any complaint or problem [she may] have to the satisfaction of both [the employee] and ENMRSH."  The section further provides that "the only way [ENMRSH] can help you answer your questions or solve your problems is for you to tell us about them."  The

handbook then outlines a three-step process the employee must go through to file a complaint. If an employee "feel[s] that any action by ENMRSH or [the employee's] supervisor is unjust," the employee must first talk to her immediate supervisor about the problem. If the immediate supervisor is unable to resolve the problem, then the employee must submit a written complaint to the department head within five work days. If an employee is unsatisfied with the decision of the department head, the employee can then discuss her complaint with the president of the company, who will review the complaint and provide a final decision within five days. The handbook cautions that "[n]othing in this procedure is intended to circumscribe or modify the existing right of ENMRSH to [demote or dismiss employees for proper cause] provided, however, that none of these rights may be exercised in an arbitrary or capricious manner."

While Smith argues that this complaint resolution required ENMRSH to progressively discipline her prior to terminating her employment, Smith does not direct us to any language in the procedure that requires ENMRSH to engage in progressive discipline or any language that otherwise alters the previous section of the handbook that provides for immediate dismissal if an employee abuses or neglects a consumer. The only language in the complaint procedure section that relates to dismissal is the statement that the complaint procedure cannot interfere with

10

ENMRSH's right to dismiss employees for cause unless a dismissal is arbitrary or capricious. This provision, like all of the other provisions in the complaint procedure section of the handbook, presupposes that an adverse action has already occurred and that the employee has initiated a complaint based on that action.

In addition, the dismissal section of the handbook provides that "[i]f you believe you have been treated unfairly, you have a right to ask for a review through the complaint procedure." Thus, while the complaint procedure section may have provided Smith with some recourse after she was terminated if she believed that her termination was arbitrary or capricious, this section of the handbook does not require any action on ENMRSH's part prior to terminating Smith, nor does it alter the fact that an employee may be dismissed for abusing a consumer or in any way mandate that ENMRSH engage in progressive discipline. *But cf. Mealand*, 2001-NMCA-089, ¶¶ 20, 34 (Sutin, J., specially concurring) (noting that a statement in an employee handbook providing that "no employee will be terminated without prior review from Human Resources" created an expectation that the employee "could be terminated only after meaningful prior review by [the employer's] human resources department and only if that review established reasonable grounds to believe that [the employee] had engaged in the alleged misconduct" (internal quotation marks omitted)). Because Smith failed to file a complaint with her supervisor pursuant to this provision of the

11

handbook, Smith cannot complain that ENMRSH did not abide by its complaint procedures; ENMRSH has to receive a complaint before it can act on it. *See Francis v. Mem'l Gen. Hosp.*, 104 N.M 698, 700, 726 P.2d 852, 854 (1986) (noting that the plaintiff's failure to comply with the grievance procedure estopped the plaintiff from asserting that he suffered a deprivation of a contractual expectation).

Smith also argues that ENMRSH was not entitled to dismiss her because there was no evidence that she abused S.S. We disagree. ENMRSH received a detailed report from Smith's co-worker, the sole eyewitness to the event, that documented Smith's abuse of S.S. Upon receipt of this report, ENMRSH advised Smith to leave the worksite and to report to her manager the next morning. When Smith failed to show up to present her version of what had occurred, ENMRSH terminated Smith based on the uncontroverted eyewitness report of abuse it had received from Smith's co-worker. Despite the fact that ENMRSH had uncontradicted evidence of abuse, Smith contends ENMRSH was not entitled to terminate her because she was never given the opportunity to present her version of what had occurred and that ENMRSH therefore did not have sufficient evidence of abuse to terminate her pursuant to its disciplinary policies. In support of this argument, Smith notes that as a general policy, ENMRSH gave its employees an opportunity to tell their side of the story when allegations of abuse arose. Smith contends that because ENMRSH did not obtain her

12

version of the events, it violated these implied expectations that employees will have an opportunity to explain what happened.

Contrary to Smith's argument, however, ENMRSH *did* attempt to obtain Smith's version of what had happened to S.S. Both Smith and ENMRSH agree that when Smith was relieved of duty, she was told to come into the ENMRSH office the following day to speak with her manager. Both parties also agree that Smith did not show up to the meeting and that when Smith failed to appear, ENMRSH proceeded to terminate Smith based on the evidence of abuse it had been given. According to Smith, she ignored the direction to go to the office to talk to her manager because she did not want to risk running into the co-worker who had filed the abuse report or her direct supervisor. Thus, contrary to Smith's argument that she was not given an opportunity to present her side of the story, the undisputed evidence shows that Smith was given an opportunity to explain what had happened but that she chose to try to call her manager instead of going into the office as she had been instructed. We therefore conclude that even if any oral representations made to Smith required ENMRSH to obtain Smith's side of the story, ENMRSH fulfilled its obligations to try to obtain Smith's story when it told her to come into the office to meet with her manager that morning.

Because the employee guidebook explicitly required dismissal for abuse of a consumer, and because ENMRSH had uncontradicted evidence that Smith had abused S.S., we agree with the district court's conclusion that even if the guidebook created an implied employment contract, the type of conduct Smith was accused of warranted immediate dismissal, not progressive discipline. We therefore affirm the district court's grant of summary judgment in favor of ENMRSH on Smith's breach of implied employment contract claims.

**Defamation**

In addition to her claims of breach of implied employment contract, Smith also sought damages against ENMRSH for defamation. The basis of Smith's complaint was a report ENMRSH made to the New Mexico Department of Health on November 18, 2002, informing the Department of Smith's abuse of S.S. Smith alleged that she did not abuse S.S. and that the report was therefore defamatory. As an affirmative defense, ENMRSH asserted that Smith's claims were barred by the applicable statute of limitations and that its report of abuse to the Department of Health was privileged because ENMRSH was required to report allegations of abuse. The court agreed and concluded that Smith's defamation claim was barred by the three-year statute of limitations for injuries to a person's reputation because the matter was filed nearly four years after Smith was reported for the abuse of S.S. and that ENMRSH's

14

communications to the Department of Health were privileged. On appeal, Smith contends that the statute of limitations did not begin to run until the date she discovered that she had been injured by the statement, that a continuing wrong tolled the statute of limitations, and that she raised an issue of fact that the defamatory statement was re-published in 2006.

New Mexico follows a single-publication rule for defamation actions, which provides that "[n]o person shall have more than one cause of action for damages for libel or slander . . . founded upon any single publication or exhibition or utterance." NMSA 1978, Section 41-7-1 (1955). An action based upon such a publication must be brought "within three years." NMSA 1978, Section 37-1-8 (1976) (providing a three-year statute of limitations for actions based on an injury to a person's reputation). This three-year period runs from the date of publication of the allegedly defamatory statement. *Fikes v. Furst*, 2003-NMCA-006, ¶ 7, 133 N.M. 146, 61 P.3d 855, *rev'd in part on other grounds by* 2003-NMSC-033, 134 N.M. 602, 81 P.3d 545. Thus, Smith had three years from the date of the publication of ENMRSH's allegedly defamatory statement to bring her defamation action.

Despite the well-settled precedent establishing that the statute of limitations begins to run when a defamatory statement is published, Smith contends that the limitations period does not begin to run until discovery of the injury. In support of her

argument, Smith directs us to NMSA 1978, Section 37-1-7 (1880) which provides that "[i]n actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved." *Id.* Defendant's reliance on this statute is misplaced. According to the clear language of its text, Section 37-1-7 applies only to actions of "fraud [or] mistake" and actions for "injur[ies to] or conversion" of property. Defamation, an injury to a person's reputation, does not constitute fraud, mistake, or an injury to property, and Smith makes no argument that defamation could somehow be equated to one of the causes of action covered by Section 37-1-7. Thus, Section 37-1-7 is inapplicable.

Smith next argues that a continuing wrong tolls the statute of limitations. The Tenth Circuit case Smith relies on to support this argument, *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996) (noting that the continuing wrong doctrine is applicable in an action for fraud, misrepresentation and unfair trade practices), like Section 37-1-1, deals with causes of action for fraud, misrepresentation, and unfair trade practices, not defamation. Smith's claim does not make any allegations of fraud, and Smith does not explain why this rule should be applied to a defamation action. We therefore do not address Smith's implication that the continuing wrong doctrine

should apply to defamation actions. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (noting that we have no duty to review an argument that has not been adequately developed).

Smith finally argues that the defamatory statement was re-published in October and November 2006, making her complaint fall within the applicable statute of limitations. In support of this argument, Smith notes that she was turned down for a job in October 2006 because of the defamatory statements and that she received a letter from ENMRSH on November 21, 2006, four years after she was originally reported to the Department of Health and one month *after* she filed her complaint, indicating that she was going to be reported to the State for the abuse of S.S. ENMRSH argues that there is no evidence to support Smith's statement in her affidavit that she received a letter from ENMRSH in November 2006, four years after she first was notified that she was being reported for the abuse of S.S. Notably, both Smith and ENMRSH agree that a letter informing Smith that she would be reported to the State was sent on November 18, 2002. Because Smith would likely have received that letter a few days later, it appears that the reference Smith makes to a November 21, 2006, letter is actually a reference to the November 18, 2002, letter which she would have received sometime around the 21st of November 2002. While

there is clearly an issue of fact regarding whether a second letter was sent in 2006, resolution of this issue is not necessary for this appeal.

In order for an individual to be liable for defamation, that individual must publish a defamatory statement to a third party. *Hagebak v. Stone*, 2003-NMCA-007, ¶ 5, 133 N.M. 75, 61 P.3d 201. That requirement is based on the notion that a statement "neither seen nor heard by a third party cannot cause harm to one's reputation." *Id.* The only allegation regarding a statement made to a third party is Smith's allegation that ENMRSH reported Smith to the Department of Health in November 2002. While Smith contends that she was turned down for a job in October 2006, she does not point to any evidence that this was the result of any new action by ENMRSH. In fact, the letters from CYFD that Smith received after she inquired about why she had been turned down for the job in October clearly indicate that the problems in her background investigation were the result of a report of abuse made on November 18, 2002. Thus, Smith's inability to obtain a job in October 2006 was based on ENMRSH's 2002 report, not on any subsequent allegations of abuse. Similarly, while Smith alleges that she received a letter in November 2006 indicating that she was going to be reported to the Department of Health, Smith does not assert that a new report was ever actually made. Instead, she asserts only that ENMRSH *threatened* to report her in 2006. Thus, Smith has only demonstrated a factual dispute

over whether ENMRSH sent a letter to Smith in 2006, not that ENMRSH ever actually made a second report to the Department of Health. Consequently, the only evidence of a statement made to a third party is the undisputed fact that ENMRSH made a report to the Department of Health in November 2002.

Because Smith did not file her complaint until 2006, four years after ENMRSH made its allegedly defamatory report to the Department of Health, and because the statute of limitations on her defamation claim expired in 2005, three years after the statement was published, we affirm the district court's ruling that Smith's defamation claim was time barred under Section 37-1-8.

Because we affirm on the basis of the statute of limitations, we do not address the merits of ENMRSH's argument that its communication to the Department of Health was required by law and therefore privileged.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

19

_____

**JAMES J. WECHSLER, Judge**


_____

**TIMOTHY L. GARCIA, Judge**